UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| NED COMER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 1:11CV220 LG-RHW |
| v. | ) | |
| | ) | |
| MURPHY OIL USA, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION OF CERTAIN COAL COMPANY DEFENDANTS FOR RULE 11 SANCTIONS

### INTRODUCTION

Litigants in our judicial system are not allowed to litigate a case all the way through available trial court and appellate avenues, indeed all the way to the United States Supreme Court, only then to start over.  This is what plaintiffs have done.  This Court dismissed with prejudice plaintiffs' claims in *Comer I* for lack of Article III standing and because they raise nonjusticiable political questions.  That dismissal remains in full force following full and extensive appellate review.  Having lost, plaintiffs now want a "do-over," and bring *Comer II*.

In so doing, plaintiffs disregard bedrock principles of judicial finality.  The doctrines of *res judicata* and collateral estoppel bar plaintiffs from re-litigating fully adjudicated claims and issues.

Rule 11 requires plaintiffs to conduct a reasonable inquiry into the law before filing suit.  A reasonable inquiry into the law shows, and would have shown before the filing of *Comer II*, that this suit is precluded by *res judicata* and collateral estoppel, and that plaintiffs' claims are neither "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).  Such an inquiry

also shows, and would have shown, that plaintiffs' reassertion of a fully litigated lawsuit would "needlessly increase the cost of litigation" for defendants forced to defend yet again.  *See* Fed. R. Civ. P. 11(b)(1).

Courts of this Circuit discipline parties who prosecute duplicative litigation in similar situations.  *See, e.g.*, *Columbus v. United Pac. Ins. Co.*, 641 F. Supp. 707, 712 (S.D. Miss. 1986) (Rule 11 sanctions for attorneys' fees appropriate against parties who file claims that are barred by *res judicata* and serve only to harass and cause unnecessary delay); *Harmony Drilling Co. v. Kreutter*, 846 F.2d 17, 18 (5th Cir. 1988) (monetary sanctions appropriate against plaintiff who filed duplicative lawsuit); *Fermin v. Nat'l Home Life Assurance Co.*, 15 F.3d 180, 1994 WL 24922 at *2 (5th Cir. 1994) (plaintiff's "persistence in litigating this lawsuit, even after he was put on notice that res judicata barred his lawsuit, clearly violates Rule 11").  They impose discipline for reasons germane here:  the Court and defendants already have devoted considerable time and resources to resolving the theories and claims advanced in *Comer I* and *II*, and should not now have that effort deemed utterly pointless.

The Moving Coal Company Defendants brought these concerns to plaintiffs' attention, and asked plaintiffs to reconsider and stand down.[1]  They declined.  The Moving Coal Company Defendants thus seek this Court's protection.

---

[1] For purposes of this motion, the Moving Coal Company Defendants are Alpha Natural Resources, Inc., Massey Energy Co., Peabody Energy Corp., and Rio Tinto Energy America, Inc. Massey Energy Co. is now known as Alpha Appalachia Holdings, Inc.

## BACKGROUND

The Moving Coal Companies' involvement in this litigation began over five years ago, when plaintiffs filed their Third Amended Complaint in *Comer I* ("*Comer I* Complaint") on April 19, 2006, asserting claims against certain coal companies and approximately two dozen oil, energy and chemical companies. [2]  *Comer I* wended its way through this Court, several rounds of briefing and oral argument in the Fifth Circuit, and briefing in the United States Supreme Court, before the Supreme Court denied plaintiffs' mandamus petition more than nine months ago, which should have put a decisive end to this litigation.  During the five years that *Comer I* was pending against them, the Moving Coal Companies were forced to expend significant effort and resources to defending against plaintiffs' claims in this Court and in appellate courts.

Specifically:

## I.      Comer I

The *Comer I* Complaint alleged various tort claims premised on a theoretical and attenuated chain of causation under which lawful greenhouse gas emissions purportedly contributed to alleged global warning, which in turn caused ocean and air temperatures to rise, which in turn affected the severity of Hurricane Katrina and caused plaintiffs' alleged injury in the form of property damage.  *See Comer I* Compl., ¶ 40.

On August 30, 2007, after hearing argument on the coal companies' Motion to Dismiss

---

[2] In *Comer I*, plaintiffs named as defendants the following coal companies who are also named as defendants in *Comer II*:  Alpha Natural Resources Inc., Arch Coal, Inc., CONSOL Energy Inc., Foundation Coal Holdings Inc., International Coal Group, Inc., Massey Energy Co., Peabody Energy Corp. and Westmoreland Coal Co.  On July 31, 2009, Alpha Natural Resources, Inc. and Foundation Coal Holdings Inc. merged and continue under the name Alpha Natural Resources, Inc.

for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (D.E. 146), this Court dismissed *Comer I* with prejudice, holding that the case was not suitable for judicial resolution because it presented nonjusticiable political questions and because plaintiffs lacked Article III standing. *Comer I*, No. 1:05-cv-00436-LG-RHW, at *1 (S.D. Miss. Aug. 30, 2007) (order granting motion to dismiss) (D.E. 368). On August 30, 2007, the Court entered judgment dismissing the case with prejudice. *Comer I*, No. 1:05-cv-00436-LG-RHW, at *1 (S.D. Miss. Aug. 30, 2007) (judgment) (D.E. 369).

On appeal, a panel of the Fifth Circuit reversed the Court's dismissal as to the claims for nuisance, trespass and negligence, finding that those claims were not barred by the political question doctrine and that plaintiffs had standing. *Comer v. Murphy Oil USA*, 585 F.3d 855, 879-80 (5th Cir. 2009).[3] On February 26, 2010, the Fifth Circuit's reversal of the Court's dismissal of these claims was vacated pursuant to Local Rule 41.3 when the Fifth Circuit granted defendants' petitions for *en banc* review. *Comer v. Murphy Oil USA*, 598 F.3d 208, 208 (5th Cir. 2010). On May 28**,** 2010, the Fifth Circuit dismissed plaintiffs' appeal after it determined it had lost a quorum to rehear the case *en banc* as a result of a recusal, and thus no longer had the power to conduct further judicial business on the appeal. *Comer v. Murphy Oil USA*, 607 F.3d 1049, 1055 (5th Cir. 2010).

---

[3] The Fifth Circuit upheld the dismissal of the unjust enrichment, fraudulent misrepresentation and concealment, and civil conspiracy and aiding and abetting claims, finding those claims barred by prudential standing considerations. *Comer*, 585 F.3d at 879-80.

4

Plaintiffs sought a writ of mandamus from the Supreme Court of the United States.  On January 10, 2011, the Supreme Court denied plaintiffs' mandamus petition.  *In re Ned Comer*, 131 S.Ct. 902, 902 (2011).

This should have marked the end of this matter.

## II.    Comer II

On May 27, 2011, plaintiffs filed their putative Class Action Complaint in this action ("*Comer II* Complaint").  The *Comer II* Complaint is in material respects a mirror image of *Comer I*.  Plaintiffs are unabashed about this:  they themselves characterize *Comer II* as a re-filing of *Comer I*.  *Comer II* Compl., ¶ 8 ("This cause of action was filed originally on September 20, 2005 . . . .")

In particular:

- The named plaintiffs in *Comer II* are identical to the named plaintiffs in *Comer I*, except for Elliot Romain, who is now deceased.  *Comer II* Compl. at 3 n.1.[4]

- The proposed class in *Comer II* is identical to the proposed class in *Comer I*.   *See Comer II* Compl., ¶ 47 ("residents and/or property owners in the State of Mississippi who suffered loss and harm as a result of Hurricane Katrina"); *Comer I* Compl., ¶ 47 (same definition).

- The defendants in *Comer I* are sued again in *Comer II* (with additional defendants named).  *E.g., Comer II* Compl., ¶ 3.

---

[4] Joseph and Cynthia Williams, who initially appeared as named plaintiffs in *Comer I*, voluntarily dismissed their claims against all defendants pursuant to Fed. R. Civ. P. 41(b) on January 26, 2007 (D.E. 330), and do not appear as named plaintiffs in *Comer II*.

- Both *Comer I* and *Comer II* allege verbatim that the Moving Coal Companies "engaged in the exploration, development, mining, production and/or combustion of coal," and that "[t]hese activities tortiously caused damage to Plaintiffs' property in Mississippi." *Comer I* Compl., ¶ 2; *Comer II* Compl., ¶ 7.

- Both actions seek to recover damages allegedly sustained as a result of Hurricane Katrina. *Comer II* Compl., ¶¶ 16-18 ("Plaintiffs own property near the Mississippi Coast that was damaged by Hurricane Katrina on or about August 29, 2005"); *Comer I* Compl., ¶¶ 13-15 ("On 29 August 2005 Hurricane Katrina struck the Mississippi Gulf Coast causing extensive and catastrophic damages . . . .").

- Both actions allege the same attenuated causal chain between lawful coal-mining operations and plaintiffs' alleged wind and water damage. *Comer II* Compl., ¶ 23 ("[Defendants'] emissions injure Plaintiffs and Plaintiffs' property on the Mississippi Gulf Coast by increasing tropical storm activity and intensity in the Gulf of Mexico and increasing sea level, which increase the risk of wind and flood damage to Plaintiffs' property."); *Comer I* Compl., ¶ 40 ("As a direct and proximate result of the activities of Defendants . . . there has been a marked increase in global temperature which, in turn, produced the conditions whereby a storm of the strength and size of Hurricane Katrina would inevitably form and strike the Mississippi Gulf Coast resulting in extensive death, injury and destruction.").

- Both actions contain claims for public and private nuisance, trespass and negligence. *Comer II* Compl., ¶¶ 12-42; *Comer I* Compl., ¶¶ 28-35.[5] Plaintiffs add a claim for declaratory relief in *Comer II*, "seek[ing] a declaration that state law tort claims arising from the defendants' emissions of carbon dioxide are not preempted by Federal law." *Comer II* Compl., ¶ 46.[6]

- *Comer I* and *Comer II* seek the same compensatory damages. *Comer II* adds some specificity on alleged damages for "increased insurance costs" and "decreased availability of insurance." *Comer II* Compl., ¶ 42.

In addition to re-filing nearly identical claims to those they asserted in *Comer I*, plaintiffs also have filed several procedurally improper motions, including two motions for partial summary judgment (D.E. 5 and 96), one of which essentially asks the Court to rule that plaintiffs are entitled to summary judgment on every issue in the case other than the calculation of damages. Plaintiffs also have filed a "Motion for Evidentiary Findings Pursuant to Rule 201(b)(2), 201(d) and 706 of the Federal Rules of Civil Procedure" (D.E. 103), which, among other things, asks the Court to make "judicial findings" regarding the science of alleged global warming, and sanction defendants "for frivolous pleadings and representations to the Court,"

---

[5] In *Comer II*, plaintiffs assert that their public and private nuisance claims arise under federal law, *Comer II* Compl., ¶¶ 5, 22, while in *Comer I*, plaintiffs relied on Mississippi law. *See Comer I* Compl., ¶ 18. The essence of plaintiffs' nuisance claims, however, remains the same – plaintiffs allege that greenhouse gas emissions are an unreasonable invasion of plaintiffs' property rights. *See, e.g., Comer II* Compl., ¶ 24.

[6] *Comer II* drops the claims for unjust enrichment, fraudulent misrepresentation, and civil conspiracy asserted in *Comer I,* which the Fifth Circuit found barred by prudential standing.

even though the only filings the Moving Coal Company defendants have made in this case so far

are administrative filings, such as notices of appearance, *pro hac vice* motions and joint motions

dealing with extensions and scheduling and formatting issues related to motions practice.[7]

## ARGUMENT

I.    **Plaintiffs' Claims Are Barred By *Res Judicata* And Collateral Estoppel.**

The doctrines of *res judicata* and collateral estoppel serve a vital function in our judicial

system.  By preventing re-litigation of claims and issues, they promote finality and certainty in

judgments, conserve judicial time and resources, and protect litigants from harassment or

coercion by lawsuit.  *Johnson v. United States*, 576 F.2d 606, 609-10 (5th Cir. 1978).  *Comer II*

violates these principles.[8]

*Comer II* is barred by *Comer I,* which finally and conclusively resolved plaintiffs' claims.

Under federal law, a judgment that dismisses a plaintiff's claims with prejudice is a final and

binding adjudication as to all claims asserted, all claims that could have been asserted, and all

---

[7] On September 29, 2011, plaintiffs filed a second, nearly identical "Motion for Evidentiary Findings Pursuant to Rule 201(b)(2), 201(d) and 706 of the Federal Rules of Civil Procedure" (D.E. 172), which again seeks judicial notice and judicial findings regarding the science of alleged global warning.  This new motion seeks prospective sanctions against defendants under Rule 11 "for any frivolous or unfounded denials of the science stated [in the motion]."  Plaintiffs have not withdrawn their original Motion for Evidentiary Findings.

[8] Plaintiffs allege that MISS. CODE ANN. § 15-1-69 (Rev. 2003) permits them to re-file their dismissed *Comer I* claims.  *See Comer II* Compl., ¶ 8.  They are in error.  Section 15-1-69 merely tolls the applicable Mississippi statute of limitations if an action is dismissed "as a matter of form" and without prejudice to refile.  *See, e.g., Thomas v. Thompson*, No. 1:10CV10-SA-JAD, 2011 WL 198120, at *5 (N.D. Miss. Jan. 20, 2011); *Marshall v. Kan. City S. Ry. Co.*, 7 So. 3d 210, 216 (Miss. 2009); *Harris v. Darby*, 17 So. 3d 1076, 1079 (Miss. 2009).  It does not revive claims dismissed with prejudice, *Estate of Pope v. Delta Health Grp.*, 55 So. 3d 1080, 1082 (Miss. 2011), nor does it provide an exception to preclusion doctrines.

issues that were actually resolved.[9]  The doctrine of *res judicata* precludes re-litigating all of

plaintiffs' claims asserted in *Comer I* against the coal company defendants named in both *Comer*

*I* and *Comer II*.  The doctrine of collateral estoppel precludes re-litigating the issues decided in

*Comer I* under the political question doctrine and Article III standing against all of the coal

company defendants named in *Comer II*.[10]

**A.     Res Judicata.**

The doctrine of *res judicata* bars parties from re-litigating claims that were or could have

been resolved in prior litigation.  *Res judicata* applies when (1) there is a final judgment on the

merits; (2) between the same parties or parties in privity; and (3) involving the same claims.  *W.*

*Tex. Mktg. Corp. v. Kellogg*, 12 F.3d 497, 500 (5th Cir. 1994).  All three elements are present

here.

**1.     The *Comer I* Judgment Is A Final Judgment On The Merits.**

**a.     Final Judgment**

A judgment is final and entitled to preclusive effect when entered on the docket.  *See*

*Cycles, Ltd. v. Navistar Fin. Corp.*, 37 F.3d 1088, 1090 (5th Cir. 1994) ("Judgments are final . . .

when fully litigated, even if not yet appealable.").  Finality does not depend on the pendency or

availability of an appeal.  *Id.*  A judgment is stripped of preclusive effect only if it is

---

[9] Federal law governs the preclusive effect of a judgment in a prior case when a federal court's
dismissal is based on federal rather than state law grounds, as in *Comer I*.  *Vasquez v.*
*Bridgestone/Firestone, Inc.*, 325 F.3d 665, 678 (5th Cir. 2003).

[10] Several other defenses bar plaintiffs' claims, including the statute of limitations, displacement
by the Clean Air Act, preemption, and plaintiffs' failure to adequately plead a claim under any of
their causes of action.

subsequently vacated, reversed or otherwise modified on appeal. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 38 (1950) ("unmodified" judgment "falls squarely within . . . the rule of res judicata"). Thus, if an appeal is dismissed without resolution, as in *Comer I*, the underlying judgment is not deprived of preclusive effect. *Id.* at 41.[11]

In *Munsingwear*, the United States filed two separate actions covering two time periods alleging that defendant violated a regulation fixing the maximum price of certain commodities. *Id.* at 37. In the first action, the district court found defendant's prices to comply with the regulation and dismissed the complaint. *Id.* On appeal of that ruling, the appellate court dismissed the appeal as moot without reaching or deciding the merits. *Id.* The district court then dismissed the second action as barred by *res judicata*. *Id.* The United States argued in the Supreme Court that *res judicata* should not apply because it was deprived of meaningful appellate review when its appeal was dismissed as moot. *Id.* at 38. The Supreme Court found otherwise, holding that the absence of a right or opportunity to appeal makes "no difference" in the application of *res judicata*. *Id.* The need for "terminal points [in] litigation," the Court reasoned, trumped any hardship from preclusion. *Id.* at 41.

As in *Munsingwear*, the *Comer I* judgment is final for purposes of *res judicata* because it has not been vacated, reversed or otherwise modified on appeal. Although the judgment was temporarily reversed by the decision of a three-judge panel pursuant to Local Rule 41.3, the judgment was reinstated when the Fifth Circuit granted rehearing *en banc*. *Comer*, 607 F.3d at

---

[11] The finality of the *Comer I* judgment is not affected by any subsequent changes in law. *Espran v. Badgett*, 659 F.2d 26, 28 (5th Cir. 1981) ("[T]he res judicata consequences of a final, unappealed judgment . . . are not altered by the fact that the judgment may have . . . rested on a legal principle subsequently overruled in another case.") (internal quotations omitted).

1055.  Thus, the district court's judgment is entitled to preclusive effect and bars plaintiffs from re-litigating the claims dismissed in *Comer I.*

<b>b.   Judgment "On The Merits"</b>

In general, a judgment entered as a result of an involuntary dismissal is considered "on the merits" when it dismisses a litigant's claims with prejudice.  *See, e.g., Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*, 870 F.2d 1044, 1046 (5th Cir. 1989); *Columbus v. United Pac. Ins. Co.*, 641 F. Supp. 707, 710 (S.D. Miss. 1986).  Thus, even when a dismissal is based on the pleadings, such as a dismissal for failure to state a claim, federal courts consider the resulting judgment "on the merits" because there is no set of facts that would entitle plaintiff to relief.  *Id.* at 710.

Application of the political question doctrine, while an issue of justiciability, "is often equivalent to a merits determination."  *Harbury v. Hayden*, 522 F.3d 413, 418 (D.C. Cir. 2008) (quoting *Baker v. Carr*, 369 U.S. 186 (1962)).  Once a claim is barred by the political question doctrine, that claim is not cognizable in federal court and must be dismissed.  *Id.*  Similarly, a dismissal based on lack of standing conclusively resolves a plaintiff's case if the defect cannot be cured.  *Frank C. Minvielle LLC v. Atlantic Refining Co.*, 337 F. App'x 429, 435 (5th Cir. 2009) ("[J]udgment which adjudicated the question of [plaintiff's] standing . . . satisfies this *res judicata* requirement."); *see also Acree v. Air Line Pilots Ass'n*, 390 F.2d 199, 203 (5th Cir. 1968).[12]

---

[12] Dismissal based on a curable defect in standing may not constitute judgment on the merits. *See, e.g., McArney v. Ford Motor Co.*, 657 F.2d 230, 233 (8th Cir. 1981).  Here, the defect in standing is not curable.

This Court's *Comer I* judgment is "on the merits" for purposes of *res judicata* because it dismissed plaintiffs' claims with prejudice.  The Court determined that "what [plaintiffs] are asking this Court to do is what *Baker* [*v.*] *Carr* told me not to do, and that is to balance economic, environmental, foreign policy, and national security interest and make an initial policy determination of a kind which is clearly nonjudicial."  Transcript of Hearing on Defendants' Motion to Dismiss, *Comer I,* No. 1:05-cv-00436-LG-RHW (S.D. Miss. Aug. 30, 2007) ("Hearing Transcript") (Ex. A), at 40:4-8.  The Court added that plaintiffs lacked standing because their alleged injuries are not "attributable or traceable to these individual defendants." *Id.* at 36:10-11.

The Court did not premise its dismissal on some curable error in plaintiffs' pleadings, but on fundamental and inescapable flaws in plaintiffs' claims which not only cannot be remedied, but which the complaint in *Comer II* does not even attempt to remedy.  The Court found that the debate over alleged global warming,

> . . . simply *has no place in the court*, until such time as Congress enacts legislation which sets appropriate standards by which this Court can measure conduct, whether it be reasonable or unreasonable, and, more important, develops standards by which a group of people, we call them juries, can adjudicate facts and apply the law, these standards, and judge whether conduct crosses the line between reasonable and legal conduct and unreasonable or tortious conduct.  *Under the circumstances, I think that the plaintiffs are asking the Court to develop those standards, and it is something that this Court simply is not empowered to do*.

Hearing Transcript at 39:7-17 (emphasis added).  The Court found that the claims also failed because plaintiffs' allegations did not (and could not) provide a basis to hold the named defendants liable for alleged injuries "attributable to a larger group that are not before this Court, not only within this nation but outside of our jurisdictional boundaries as well."  *Id.* at 36:12-14.

2.      *Comer I* **And** *Comer II* **Involve The Same Parties.**

The *Comer II* named plaintiffs (except for the deceased Elliott Romain) were also named plaintiffs in *Comer I*. Alpha Natural Resources Inc., Massey Energy Co., and Peabody Energy Corp. are named defendants in *Comer II* and were also named as defendants in *Comer I*.[13]

3.      *Comer I And Comer II Involve The Same Claims.*

To determine whether the same cause of action is involved, the Fifth Circuit utilizes a transactional test. *Travelers Ins. Co. v. St. Jude Hosp.*, 37 F.3d 193, 195 (5th Cir. 1994). The critical issue is not the relief requested or the theory asserted, but whether plaintiff grounds the two actions in the same nucleus of operative facts. *Id. Res judicata* bars "all claims that *were or could have been advanced* in support of the cause of action on the occasion of its former adjudication . . . not merely those that were adjudicated." *Goldberg v. R.J. Longo Constr. Co. v. Mid-Continent Cas. Co.*, 54 F.3d 243, 246 (5th Cir. 1995) (emphasis added) (citation omitted).

The same nucleus of operative facts underlies the claims asserted in *Comer I* and *Comer II*. In both, plaintiffs allege that lawful coal-mining operations contributed to an increased concentration of greenhouse gases in the atmosphere; increased concentrations of greenhouse gases increased sea and air temperatures in the Gulf Coast; increased sea and air temperatures increased the intensity and destructive force of Hurricane Katrina; and Hurricane Katrina caused property damage and other injuries to plaintiffs. *Comer II* Compl., ¶¶ 16-18; *Comer I* Compl., ¶¶ 13-15, 40. Plaintiffs' allegations in both actions cover the same time period. *Comer II* Compl.,

---

[13] Plaintiffs named additional coal companies as defendants in *Comer II*, including Rio Tinto Energy America, Inc.

¶¶ 26, 42; *Comer I* Compl., ¶ 40.  There are no factual allegations in *Comer II* that were not or could not have been included in *Comer I*.[14]

It is true that plaintiffs substitute a federal common law nuisance claim in *Comer II* for their state law nuisance claim in *Comer I*, and add a claim for declaratory relief.  It is also irrelevant.  These claims could have been asserted in *Comer I*, as they arise from the same core nucleus of operative facts, and hence meet the transactional test.  *See Cook v. Bd. of Supervisors of Lowndes Cnty.*, 806 F. Supp. 610, 618 (S.D. Miss. 1992).

**B.**     **The Doctrine of Collateral Estoppel Bars Plaintiffs From Re-litigating The Political Question And Standing Issues Decided In *Comer I*.**

*Comer II* is also barred by the doctrine of collateral estoppel because the *Comer I* judgment conclusively determined two issues that are each dispositive of *Comer II* – that plaintiffs' claims are barred by the political question doctrine, and that plaintiffs lack Article III standing.

Once a court has decided an issue essential to its judgment, collateral estoppel precludes the issue from being re-litigated in another suit involving a party to the first case.  *Id.* at 616.  For collateral estoppel to apply, three criteria must be met:  (1) the issue at stake should be identical to the one involved in the prior litigation; (2) the issue actually has been litigated in the prior

-----

[14] For example, in *Comer II*, plaintiffs include allegations in their negligence claim that "Defendants are also strictly liable for the injuries that result from their greenhouse gas emissions.  Defendants knew that their emissions were likely to contribute to widespread and severe injuries to residents of low lying coastal areas in and around the Gulf of Mexico by increasing both sea levels and tropical storm intensity, frequency and magnitude."  *Comer II* Compl., ¶ 36.  While this precise allegation does not appear in the *Comer I* Complaint, plaintiffs certainly could have included it, along with their claim that "Defendants have knowingly and willfully continued to engage in the activities which cause Global Warming."  *Comer I* Compl., ¶ 11.

litigation; and (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the earlier action. *Walker v. Kerr-McGee Chem. Corp.*, 793 F. Supp. 688, 694 (N.D. Miss. 1992).

Collateral estoppel applies equally to issues of justiciability and standing as it does to issues of fact. *Estevez v. Nabers*, 219 F.2d 321, 324 (5th Cir. 1955) ("[The standing] question actually decided in the first action disposes of the present one as well."); *see also Beiser v. Wyeler*, 284 F.3d 665, 673 (5th Cir. 2002). Thus, where a prior judgment conclusively determines that a plaintiff's claims are barred by the political question doctrine or a plaintiff lacks Article III standing, the parties to that judgment are precluded from re-litigating those issues in a subsequent suit based on the same claims. *See Estevez*, 219 F.2d at 324.

Unlike *res judicata,* however, collateral estoppel does not require that all parties to the second suit be identical to, or in privity with, the parties to the first suit. *Johnson*, 576 F.2d at 614. Collateral estoppel applies so long as the party being precluded was a party to the prior action and had a full and fair opportunity to litigate the relevant issue. *Id.* Per collateral estoppel, then, a plaintiff is bound by an adverse judgment on issues dispositive of his claims even if he brings a second action against new defendants. *Id.*

In this case, collateral estoppel requires dismissal of plaintiffs' claims against all of the coal companies sued in *Comer II*. Plaintiffs had a full and fair opportunity in *Comer I* to present their arguments regarding the political question doctrine and standing. The Court's judgment fully adjudicated these issues adversely to plaintiffs. *Comer II* presents essentially the same factual allegations and claims as those dismissed in *Comer I*. It does not present any new facts or claims that would change the result reached in *Comer I*.

## II.     The Filing Of *Comer II* Violates Rule 11.

Rule 11 requires parties to conduct a reasonable inquiry to ensure that they file only those claims that (1) are "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; and are (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(1) and (2).  These obligations are mandatory. *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003) ("[e]ach obligation [under Rule 11(b)(1) and (b)(2)] must be satisfied").  When parties and their attorneys fail to meet Rule 11's obligations, sanctions should be imposed. *Id.* (violation of either Rule 11(b)(1) or (b)(2) "justifies sanctions").

### A.     A Reasonable Inquiry Would Reveal The Preclusive Effect Of *Res Judicata* And Collateral Estoppel On *Comer II*.

In filing their acknowledged duplicative lawsuit, plaintiffs and their counsel violated these duties.  *See, e.g., Harmony Drilling*, 846 F.2d at 18 (Rule 11 monetary sanctions appropriate where plaintiff and his attorney filed duplicative lawsuit one year after their "virtually identical" claims were dismissed).  Even minimal inquiry would have revealed that the doctrines of *res judicata* and collateral estoppel bar the reassertion of plaintiffs' *Comer I* claims in the guise of *Comer II. Columbus*, 641 F. Supp. at 711-12 (prior dismissal put plaintiff on notice that there could be no good faith argument for the extension, modification or reversal of existing law); *see also Tarver v. United States*, 785 F. Supp. 607, 614 (S.D. Miss. 1991) (prior dismissal provided notice to plaintiffs of the insufficiency of their claims).

Lest there be any doubt, the Moving Coal Company Defendants advised plaintiffs and their counsel that *res judicata* and collateral stopped barred their claims on September 9, 2011 by serving them with a draft of this brief.  *See id.* (before filing Rule 11 motion, defendant directed

16

plaintiff to case law that apprised him of the insufficiency of his claims).  Plaintiffs still declined to withdraw *Comer II*.

      **B.**      **Rule 11 Sanctions Are Appropriate.**

      The Fifth Circuit, and courts in this district, have a track record of imposing sanctions upon parties and their attorneys who file claims barred by established legal doctrines such as *res judicata* and collateral estoppel.  *See, e.g., Columbus*, 641 F. Supp. 707 at 712 (Rule 11 sanctions for attorneys' fees appropriate against parties who file claims that are barred by *res judicata* and serve only to harass and cause unnecessary delay); *Harmony Drilling*, 846 F.2d at 18-19 (monetary sanctions appropriate against plaintiff who filed duplicative lawsuit); *Fermin*, 15 F.3d 180, 1994 WL 24922 at *2 (plaintiff's "persistence in litigating this lawsuit, even after he was put on notice that res judicata barred his lawsuit, clearly violates Rule 11"); *Tarver*, 785 F. Supp. at 614 (monetary sanctions appropriate against plaintiff who re-filed claims after being put on notice of their insufficiency); *Murungi v. Daimler Chrysler Servs. N. Am.*, 67 F. Appx. 247 (5th Cir. 2003) (district court did not abuse its discretion by imposing sanctions upon party who filed claims that were barred by *res judicata*).

      Particularly instructive is *Columbus*, in which plaintiff filed a second lawsuit after the court dismissed with prejudice nearly identical claims.  *See Columbus*, 641 F. Supp. at 709-10. Upon determining that plaintiff's claims were barred by *res judicata*, the court imposed Rule 11 sanctions, finding that the second lawsuit harassed defendants and caused unnecessary delay in the final disposition of the dispute.  *Id.* at 712.  In imposing monetary sanctions against both plaintiff and counsel, the court relied primarily upon five factors – each of which is present in *Comer II*:

- "A reasonable inquiry into the law governing res judicata would have clearly shown that this action . . . was barred by the prior judgment of dismissal."

17

- "Factually the instant case is a 'mirror image' of the claims previously asserted against these Defendants."

- "No new facts have been alleged."

- "Counsel for Defendants responded to the instant complaint by promptly notifying Plaintiff's attorney of their position regarding the judgment of dismissal in the prior action and cautioned that they would seek sanctions under Rule 11 unless the action was voluntarily dismissed."

- "This notification gave Plaintiff's attorney an additional opportunity to undertake an investigation into the applicable law concerning the effect of the prior judgment, but that opportunity was apparently rejected."

*Id.* at 711.

Here, as in *Columbus*:

- A reasonable inquiry into the law governing *res judicata* and collateral estoppel would have shown that *Comer II* is barred by the Court's judgment in *Comer I*.

- *Comer II* is factually a mirror image of *Comer I*.

- *Comer II* does not allege new facts not alleged in *Comer I*.

- The Moving Coal Company Defendants notified plaintiffs' counsel of their position that *Comer II* is barred by *res judicata* and collateral estoppel, and that they were prepared to seek Rule 11 sanctions.

- Plaintiffs rejected the opportunity to conduct further inquiry into applicable law and voluntarily dismiss their improper claims.

As in *Columbus*, this Court should impose Rule 11 sanctions against plaintiffs and their counsel.

*See also Murungi*, 67 F. Appx. 247 (district court did not abuse its discretion by imposing sanctions upon party who filed claims barred by *res judicata*).

Rule 11(c)(1) authorizes the Court to issue an "appropriate sanction" for violations of Rule 11(b). Among the sanctions permitted by Rule 11(c)(4) are a non-monetary directive (such as an order barring plaintiffs and their counsel from reasserting their *Comer I* claims against the Moving Coal Company Defendants), an order requiring plaintiffs and their counsel to pay a

penalty into Court, and/or an order directing plaintiffs and their counsel to reimburse the Moving

Coal Company Defendants' reasonable attorneys' fees and other expenses directly resulting from

the filing of *Comer II*.  *See, e.g.*, *Columbus*, 641 F. Supp. at 711-12 (requiring plaintiff and his

counsel to pay defendants' reasonable attorneys' fees in defending suit barred by *res judicata*);

*Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) (federal courts have inherent

power to dismiss cases due to misconduct).  Here, the conduct of plaintiffs and their counsel

merit, at the very least, the award of the attorneys' fees expended by the Moving Coal Company

Defendants in defending *Comer II*, and an order barring plaintiffs and their counsel from

reasserting their *Comer I* claims against the Moving Coal Company Defendants.

## C.     The Procedural Requirements Of Rule 11 Have Been Observed.

The procedural requirements of Rule 11(c)(2) have been satisfied.  First, this motion is

brought separately from any other motion.  Second, this motion describes in detail the specific

conduct that violates Rule 11 – bringing duplicative claims that are barred by *res judicata* and

collateral estoppel.  Third, more than 21 days before filing this motion, the Moving Coal

Company Defendants provided plaintiffs' counsel a draft of this brief and indicated that it would

be filed if plaintiffs did not voluntarily dismiss the *Comer II* Complaint.  *See* Ex. B.  Finally, this

motion was served in a timely manner upon the filing of *Comer II*.

## CONCLUSION

This case should not exist, and should not have been filed.  The Moving Coal Company

Defendants respectfully request that the Court impose such Rule 11 sanctions as this Court

deems just and proper.

Dated:  October 14, 2011                    Respectfully submitted,

                                            s/ Kathleen Taylor Sooy
                                            _____

                                            Robert D. Gholson (MSB No. 4811)
                                            GHOLSON BURSON ENTREKIN &
                                            ORR, P.A.
                                            535 North 5th Avenue (39440)
                                            P.O. Box 1289
                                            Laurel, Mississippi 39441-1289
                                            Telephone:  (601) 649-4440
                                            Facsimile:  (601) 649-4441
                                            gholson@gbeolaw.com

                                            OF COUNSEL:

                                            Kathleen Taylor Sooy
                                            Scott L. Winkelman
                                            Tracy A. Roman
                                            CROWELL & MORING LLP
                                            1001 Pennsylvania Ave., N.W.
                                            Washington, DC  20004-2595
                                            Telephone:  (202) 624-2500
                                            Facsimile:  (202) 628-5116

                                            ATTORNEYS FOR ALPHA NATURAL
                                            RESOURCES, INC.; MASSEY ENERGY
                                            COMPANY; PEABODY ENERGY
                                            CORPORATION; AND RIO TINTO ENERGY
                                            AMERICA, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14th, 2011, I electronically filed the foregoing with the clerk of the Court using the ECF/CM system, which automatically sent notification of such filing to all parties who have appeared in this case.

s/ Kathleen Taylor Sooy