IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

NED COMER, et al.                                                        PLAINTIFFS

v.                                                      CAUSE NO. 1:11CV220-LG-RHW

MURPHY OIL USA, INC., et al.                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

**BEFORE THE COURT** are the Motion [100] to Dismiss filed by Hess

Corporation, the Motion [207] to Dismiss Amended Complaint filed by Certain

Defendants,[1] the Motion [208] to Dismiss filed by the Coal Company Defendants,[2]

and the Motion [217] to Dismiss filed by Total Petrochemicals USA, Inc., and Total

Gas & Power North America, Inc.  The plaintiffs have filed a Memorandum in

Opposition [285] to these Motions, and the defendants have filed Replies [286, 287,

289].  Upon reviewing the submissions of the parties, the record in this matter, and

the applicable law, the Court finds that the defendants' Motions to Dismiss should

be granted.

---

[1] This Motion was filed by sixty-two of the defendants to this lawsuit.  The complete list of filing defendants is located in footnote one of the defendants' Motion. (Certain Defs.' Mot. 1 n.1, ECF No. 207).  The following defendants have also joined in this Motion: BHP Minerals, Total Petrochemicals USA, Total Gas & Power NA, Edison Mission Fuel, and Edison Capital.  (Joinders, ECF Nos. 213, 268, and 277).

[2] The following defendants filed this Motion: Alpha Natural Resources, Inc., Arch Coal, Inc., CONSOL Energy Inc., International Coal Group, Inc., Massey Energy Company, The North American Coal Corporation, Ohio Valley Coal Company, Peabody Energy Corporation, Rio Tinto Energy America, Inc., and Westmoreland Coal Company.  (Coal Defs.' Mot., ECF NO. 208).  BHP Minerals joined this Motion. (Joinder, ECF No. 277).

## BACKGROUND

On September 20, 2005, Ned Comer, Brenda Comer, and Joseph Cox,[3] individually and on behalf of all persons similarly situated, filed a lawsuit in this Court against a group of insurance companies and a group of oil companies. (Compl., No. 1:05cv436, ECF No. 1).  The case was assigned cause number 1:05cv436-LG-RHW.  The plaintiffs alleged that the oil company defendants released by-products that led to the development and increase of global warming, which produced the conditions that formed Hurricane Katrina, which damaged their property.  (*Id.* at 9-12).  The plaintiffs alleged that the insurers wrongfully denied insurance coverage for damages that the proposed class of plaintiffs suffered during Hurricane Katrina.  (*Id.* at 1-9).

The plaintiffs filed a First Amended Complaint that added the following plaintiffs as parties: Eric Haygood, Brenda Haygood, Larry Hunter, Sandra L. Hunter, Mitchell Kisielweski, and Johanna Kisielewski.[4]  (1st Am. Compl., No. 1:05cv436, ECF No. 3).  The First Amended Complaint also named several mortgage companies as defendants, claiming that they waived their right to collect mortgage payments by failing to obtain sufficient insurance to protect mortgaged property that was damaged by Hurricane Katrina.  (1st Am. Compl. 14-16, No.

---

[3] The Comers' last name was misspelled *Comber* in their original Complaint. Joseph Cox voluntarily dismissed his claims six days after the lawsuit was filed.

[4] Mitchell and Johanna Kisielewski are married, but Mitchell's name was misspelled in the First Amended Complaint.

1:05cv436, ECF No. 3).  The Court dismissed the plaintiffs' claims against the insurers and mortgage companies, but permitted the plaintiffs' claims against the oil company defendants to proceed.  (Order, No. 1:05cv436, ECF No. 74).

The plaintiffs filed a Third Amended Complaint[5] that added the following plaintiffs: Joseph Williams, Cynthia Williams, Elliott Roumain, Rosemary Roumain, Judy Olson, and David Lain.  (3d Am. Compl., 1:05cv436, ECF No. 79). The plaintiffs also added claims against several electric companies, chemical manufacturers, and coal companies.  (*Id.*)  The Third Amended Complaint asserted the following claims related to the plaintiffs' contention that the defendants' greenhouse gas emissions caused the damages they suffered during Hurricane Katrina: unjust enrichment, civil conspiracy and aiding and abetting, public and private nuisance, trespass, negligence, and fraudulent misrepresentation and concealment.  (*Id.*)  The defendants filed several motions seeking dismissal of the plaintiffs' claims, and the plaintiffs filed a Motion for Leave to File a Fourth Amended Complaint that sought to add numerous additional defendants.  (Defs.' Mots., No. 1:05cv436, ECF Nos.  90, 129, 133, 146, 186, 255, 283, 288, 296, 348; Pls.' Mot. to Am. Compl., No. 1:05cv436, ECF No. 304).

On August 30, 2007, this Court conducted a hearing concerning the Coal Companies' Motion to Dismiss [146].  The Court held that the plaintiffs did not have standing to bring the lawsuit, because their injuries were not fairly traceable to the

---

[5] It appears that no "Second Amended Complaint" was filed in the case.

actions of the defendants.  (Order, No. 1:05cv436, ECF No. 368).  The Court also held that the plaintiffs' claims were non-justiciable pursuant to the political question doctrine.  (*Id.*)  Because the Court found that it did not have jurisdiction to hear any of the plaintiffs' claims, the plaintiffs' Motion for permission to file a fourth amended complaint and all other pending motions were rendered moot.  (Tr. 41-42, ECF No. 207-8).  A Judgment was entered dismissing the plaintiffs' claims. (J., No. 1:05cv436, ECF No. 369).  The plaintiffs appealed this Court's Judgment. (Notice of Appeal, No. 1:05cv436, ECF No. 370).

On October 16, 2009, a Fifth Circuit panel of three judges reversed in part this Court's decision with regard to the plaintiffs' state claims of public and private nuisance, trespass, and negligence.  *Comer v. Murphy Oil USA*, 585 F.3d 855, 880 (5th Cir. 2009).  However, the Fifth Circuit panel agreed that the plaintiffs' unjust enrichment, civil conspiracy, and fraudulent misrepresentation claims should be dismissed for lack of standing.  *Id.* at 879-80.  The defendants filed a petition for rehearing en banc.  Several of the Fifth Circuit Court of Appeals judges were disqualified from participating in the case, but a rehearing en banc was granted by a majority of the remaining nine judges on February 26, 2010.  *Comer v. Murphy Oil USA*, 598 F.3d 208, 210 n.1 (5th Cir. 2010).  After the rehearing en banc had been granted, "new circumstances arose that caused the disqualification and recusal" of another appeals court judge.  This resulted in the loss of a quorum before the en banc panel of the Fifth Circuit Court of Appeals.  *Comer v. Murphy Oil USA*,

607 F.3d 1049, 1053-54 (5th Cir. 2010). The Fifth Circuit held that it was not authorized to transact judicial business in the absence of a quorum. *Id.* at 1054. Therefore, it directed the Clerk to dismiss the plaintiffs' appeal. *Id.* at 1055. The Fifth Circuit also explained that the panel opinion was lawfully vacated before the Court lost its quorum, and due to the subsequent loss of the quorum, it could not reinstate the panel opinion. *Id.* Since the panel opinion was vacated, there was no Fifth Circuit opinion or judgment upon which a mandate could issue. *Id.* The Court noted, however, that the parties had the right to petition the Supreme Court of the United States. *Id.*

The plaintiffs chose not to file a petition for a writ of certiorari as to the merits of their appeal, but they filed a petition for a writ of mandamus asking the Supreme Court to order the Fifth Circuit to reinstate their appeal. (Defs.' Mot., Ex. 25, ECF No. 207-25). The Supreme Court denied the plaintiffs' petition on January 10, 2011. *In re Ned Comer*, 131 S. Ct. 902 (2011).

## FACTS AND PROCEDURAL HISTORY

On May 27, 2011, Ned Comer, Brenda Comer, Eric Haygood, Brenda Haygood, Larry Hunter, Sandra L. Hunter, Mitchell Kisielewski, Johanna Kisielewski, Rosemary Romain,[6] Judy Olson, and David Lain, individually and on behalf of all other persons similarly situated, filed the present lawsuit against numerous oil companies, coal companies, electric companies, and chemical

---

[6] Rosemary Romain's name was misspelled in the 2005 Comer lawsuit. Elliott Romain passed away before the 2011 lawsuit was filed.

companies.  (Compl., ECF No. 1).[7]  The plaintiffs filed an Amended Complaint on August 2, 2011, asserting public and private nuisance, trespass, and negligence claims against the defendants.  (Am. Compl. 13, 17, ECF No. 28).  They also seek a declaratory judgment that their state law tort claims arising from the defendants' emissions are not preempted by federal law, and they request class designation. (*Id.* at 20-21).

In support of their nuisance claims, which are filed pursuant to both federal and state common law, the plaintiffs allege that the defendants' activities are among the largest sources of greenhouse gases that cause global warming.  (*Id.* at 10, 13).  The plaintiffs claim that global warming led to high sea surface temperatures and sea level rise that fueled Hurricane Katrina, which damaged the plaintiffs' property.  (*Id.* at 13-14).  They allege that global warming has caused them to incur higher insurance premiums and has lowered the resale value of their homes due to the increased risk of tropical storm activity, wind damage, and flood damage.  (*Id.* at 15).  Furthermore, the plaintiffs claim that the defendants' emissions constitute an unreasonable invasion of the plaintiffs' property rights. (*Id.*)  Because they live in low-lying coastal areas on or near the Gulf of Mexico, the plaintiffs claim that they have suffered more severe injuries that the general public. (*Id.* at 16).  In addition, the plaintiffs claim that the sea level rise causes saltwater intrusion, loss of habitat for hunting and fishing, and the submersion of public and

---

[7] Unless otherwise specified all documents cited in this opinion pertain to Cause No. 1:11cv220.

private property.  (*Id.* at 16).  All of these effects of global warming, according to the

plaintiffs, have resulted in the loss of the use and quiet enjoyment of their property.

(*Id.*)

In support of their trespass claim, the plaintiffs argue that the defendants'

emissions have caused saltwater, debris, sediments, hazardous substances, and

other materials to enter and damage their property.  (*Id.* at 17).  In support of their

negligence claim, the plaintiffs state that the defendants have a duty to conduct

their business in a way that does not unreasonably endanger the environment,

public health, and public and private property.  (*Id.*)  The plaintiffs allege that the

defendants' emissions constitute a breach of that duty.  (*Id.* at 18).  The plaintiffs

also contend that the defendants should be held strictly liable for the injuries that

result from their emissions.  (*Id.*)  The plaintiffs state:

> In the alternative, if Defendants' activity did not directly cause the
> increase in sea surface temperatures which fueled Hurricane Katrina,
> their actions nevertheless have increased and will continue to increase
> the risk of more intense tropical cyclones and other storms, as well as
> sea level rise (through melting of glacial ice and thermal expansion) in
> the immediate future.  These activities put Plaintiffs' property at
> greater risk of flood and storm damage, and dramatically increase
> Plaintiffs' insurance costs.

(*Id.*)  The plaintiffs seek compensatory and punitive damages as a result of the

defendants' conduct.  (*Id.* at 19-20).

The defendants have filed four separate but similar Motions to Dismiss the

plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Defs.' Mots.,

ECF Nos. 100, 207, 208, 217).  The plaintiffs have also filed a Motion for Partial

Summary Judgment, and two Motions to Appoint Experts, Take Judicial Notice, and Impose Sanctions. (Pls. Mots., ECF Nos. 96, 102, 172). Several defendants have also filed Motions to Dismiss for Lack of Personal Jurisdiction, and one defendant has filed a Motion to Dismiss for Insufficient Process and Insufficient Service of Process. (Defs.' Mot., ECF Nos. 199, 203, 205, 223, 278). Alpha Natural Resources, Massey Energy, Peabody Energy, and Rio Tinto Energy have filed a Motion for Sanctions. (Defs.' Mot., ECF No. 211). The parties agreed to a special briefing schedule and extended page limitations related to Motions to Dismiss that were filed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Agreed Order, ECF No. 150). The parties also agreed that the Court should rule on those Motions before deciding the Motions to Dismiss for Lack of Personal Jurisdiction. (*Id.*) The defendants obtained a stay of the deadlines for filing responses to the plaintiffs' Motion for Partial Summary Judgment [96] and Motions to Appoint Experts, Take Judicial Notice, and Impose Sanctions [102, 172] until after the Court ruled on the Motions to Dismiss. (Order, ECF No. 186). The defendants' Motions to Dismiss have been fully briefed by the parties and are now ripe for review.

## DISCUSSION

## I. RES JUDICATA AND COLLATERAL ESTOPPEL

Some of the defendants argue that this lawsuit is barred by the doctrines of res judicata and collateral estoppel. "The res judicata effect of a prior judgment is a question of law . . . ." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004). "Claim preclusion, or res judicata, bars the litigation of claims that

either have been litigated or should have been litigated or should have been raised

in an earlier suit." *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999).  Res

judicata bars a claim if the following four requirements are met: "(1) the parties are

identical or in privity; (2) the judgment in the prior action was rendered by a court

of competent jurisdiction; (3) the prior action was concluded by a final judgment on

the merits; and (4) the same claim or cause of action was involved in both actions."

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2004).

　　As for the first requirement, the eleven plaintiffs in the present lawsuit were

also plaintiffs in the 2005 lawsuit.  They have also named additional new

defendants in the present lawsuit.  However, the plaintiffs attempted to name

several of those new defendants in a proposed Fourth Amended Complaint in the

2005 lawsuit.  "[T]he naming of additional parties does not eliminate the res

judicata effect of a prior judgment 'so long as the judgment was rendered on the

merits, the cause of action was the same and the party against whom the doctrine is

asserted was a party to the former litigation.'" *United States ex rel. Robinson

Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 249 (9th Cir. 1992)

(quoting *Dreyfus v. First Nat'l Bank of Chicago*, 424 F.2d 1171, 1175 (7th Cir.), *cert.

denied*, 400 U.S. 832 (1970)).

　　Furthermore, in the 2005 lawsuit, this Court dismissed all of the plaintiffs'

claims against all of the defendants, even those that had not joined in a Motion to

Dismiss, and mooted the plaintiffs' proposed Fourth Amended Complaint, because

the Court determined that it did not have jurisdiction to hear any of the plaintiffs'
claims.  The naming of additional defendants to the present lawsuit does not
destroy the identity of the parties, particularly since the Court refused to permit the
plaintiffs to add new defendants in the 2005 lawsuit.  *See Fernandez-Montes v.
Allied Pilots Ass'n*, 987 F.2d 278, 284 n.8 (5th Cir. 1993) (explaining that a Court's
denial of a motion to file an amended complaint with prejudice is res judicata as to
any claim in the proposed amended complaint).   Furthermore, the existing
defendants in the 2005 lawsuit adequately represented the interests of the new
defendants named in the present lawsuit.  *See Meza v. Gen. Battery Corp.*, 908 F.2d
1262, 1266 (5th Cir. 1990) (noting that identity of the parties exists where a non-
party's interests were adequately represented by a party to the original lawsuit).

The second requirement – the judgment in the prior action was rendered by a
court of competent jurisdiction – is also satisfied.  "[I]t is familiar law that a federal
court always has jurisdiction to determine its own jurisdiction."  *United States v.
Ruiz*, 536 U.S. 622, 628 (2002).  Therefore, this Court had the authority to
determine whether it had jurisdiction over the 2005 lawsuit.

The third requirement of res judicata demands that the prior action was
concluded by a final judgment on the merits.  First, the judgment entered in the
2005 lawsuit was final.  Although it was reversed by a Fifth Circuit panel, the panel
opinion was vacated, and no mandate was issued reversing or setting aside this
Court's 2005 judgment.  "Until a mandate issues, an appellate judgment is not

final; the decision reached in the opinion may be reversed by the panel, or reconsidered by the en banc court, or *certiorari* may be granted by the Supreme Court." *Flagship Marine Servs. v. Belcher Towing Co.*, 23 F.3d 341, 342 (11th Cir. 1994), *quoted with approval in Charpentier v. Ortco Contractors*, 480 F.3d 710, 713 n.10 (5th Cir. 2007). As the Fifth Circuit stated in its Order dismissing the plaintiffs' appeal, the plaintiffs could have filed a petition for writ of certiorari with the United States Supreme Court, but they chose not to do so. Therefore, this Court's 2005 Judgment was never overturned, and it remained a final judgment.

Furthermore, this Court's 2005 Judgment was on the merits for the purposes of res judicata.

> Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merit[s] so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims.

*Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980).

As for the fourth requirement, the Fifth Circuit has adopted a transactional test for determining whether two cases involve the same claim or cause of action. *Singh*, 428 F.3d at 571. "Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." *Id.* "If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred." *Id.*

In the plaintiffs' Memorandum, they admit:

> *This action is a re-filing of an original action* of the same name
> (*Comer I*), involving the same plaintiffs and, . . . there are additional
> defendants many of whom are named in the Fourth Amended
> Complaint filed under motion for leave to amend and awaiting
> disposition at the time this court originally dismissed Comer I.

(Pls.' Mem. 1, ECF No. 285) (emphasis added).  In addition, it is clear that the

plaintiffs are asking the Court to overturn its prior judgment in the present case,

since this case cannot proceed unless the Court overturns that judgment.

Therefore, it is undisputed that the 2005 lawsuit and the present lawsuit involve

the same claims or causes of action.  As a result, the Court finds that the plaintiffs'

claims are barred by the doctrine of res judicata.

   The Court finds that this lawsuit is also barred by the doctrine of collateral

estoppel.

> To establish collateral estoppel under federal law, one must show: (1)
> that the issue at stake [is] identical to the one involved in the prior
> litigation; (2) that the issue has been actually litigated in the prior
> litigation; and (3) that the determination of the issue in the prior
> litigation has been a critical and necessary part of the judgment in
> that earlier action.

*Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009).

Collateral estoppel does not require that the parties be identical, as long as the

party opposing collateral estoppel had the full and fair opportunity to litigate the

issue in the prior lawsuit.  *Id.*  All of the elements of collateral estoppel are clearly

satisfied in this lawsuit.  As explained previously, the plaintiffs have conceded that

this lawsuit is nearly identical to the 2005 lawsuit.  The issues of whether the

plaintiffs have standing to assert their claims and whether the lawsuit presents a

political question were raised in the prior lawsuit, contested by the plaintiffs, and

determined by the Court.  Finally, the Court's determinations regarding the issues

in the prior lawsuit were undisputedly critical and necessary to the judgment

entered.

Nevertheless, out of an abundance of caution, the Court will once again

address whether the plaintiffs have standing and whether this lawsuit presents a

political question.  The Court will also address additional arguments for dismissal

made by the defendants including preemption, the statute of limitations, and the

lack of proximate cause.

## II. STANDING

A Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter

jurisdiction should be granted "only if it appears certain that the plaintiff cannot

prove any set of facts in support of his claim that would entitled him to relief."

*Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.

1998).  "A case is properly dismissed for lack of subject matter jurisdiction when the

court lacks the statutory or constitutional power to adjudicate the case."  *Id.*  A

district court "may base its disposition of a motion to dismiss for lack of subject

matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by

undisputed facts; or (3) the complaint supplemented by undisputed facts plus the

court's resolution of disputed facts."  *Robinson v. TCI/US W. Commc'ns, Inc.*, 117

F.3d 900, 904 (5th Cir. 1997).

-13-

The doctrine of standing arises out of Article III, Section 2 of the United States Constitution, which provides that the federal judicial power shall only extend to actual "cases or controversies." *See* U.S. Const. art. III, §2, cl. 1. The doctrine of constitutional standing consists of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an injury in fact, which consists of an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Id.* Second, a causal connection must exist between the injury complained of and the defendant's conduct. *Id.* Third, it must be likely that the injury will be redressed by a favorable decision. *Id.* at 561. The party invoking the court's jurisdiction has the burden of demonstrating each of these elements. *Id.* "[A]t the pleading stage, general factual allegations of injury resulting from the defendants' conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Bennett v. Spear*, 520 U.S. 154, 168 (1997).

The only element of standing that is at issue in the present case is the causal connection element. This "causation element does not require a party to establish proximate cause, but only requires that the injury be 'fairly traceable' to the defendant." *League of United Latin Amer. Citizens v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011). In order to demonstrate this element, the plaintiff must show "that it is substantially probable . . . that the challenged acts of the defendant, not

of some absent third party, will cause the particularized injury of the plaintiff."
*Ctr. for Biological Diversity v. U. S. Dep't of the Interior*, 563 F.3d 466, 478 (D.C.
Cir. 2009); *see also Allen v. Wright*, 468 U.S. 737, 759 (1984) (noting that the chain
of causation asserted by the plaintiffs is particularly weak where it involves
numerous third parties).  "The more attenuated or indirect the chain of causation
between the [defendant's] conduct and the plaintiff's injury, the less likely the
plaintiff will be able to establish a causal link sufficient for standing." *Ctr. for
Biological Diversity*, 563 F.3d at 478 (citing *Allen*, 468 U.S. at 757-58).

In *Massachusetts v. Environmental Protection Agency*, the United States
Supreme Court addressed the issue of standing in the context of injuries allegedly
caused by global warming.  *Massachusetts v. Envtl. Prot. Agency*, 549 U.S. 497, 517
(2007).  Massachusetts, local governments, and environmental organizations
petitioned for review of an EPA order denying a petition for rulemaking regulating
greenhouse gases emitted by motor vehicles under the Clean Air Act.  *Id.* at 514.
The Court explained that it was only necessary for one of the plaintiffs in that
lawsuit to have standing to permit the Supreme Court to consider their petition for
review.  *Id.* at 518.  The Court emphasized "the special position and interest of
Massachusetts," and stated: "It is of considerable relevance that the party seeking
review is a sovereign State, and not, as it was in *Lujan*, a private individual." *Id.*
The Court noted that Massachusetts filed the lawsuit in its capacity of quasi-
sovereign, and thus, the Court determined that it was entitled to "special solicitude"

in the Court's standing analysis. *Id.* at 520. The Court stated that the EPA's refusal to regulate emissions presented a risk of harm to Massachusetts that was actual and imminent, since the emissions caused rising sea levels that, according to affidavits presented by Massachusetts, had "already begun to swallow Massachusetts' coastal land." *Id.* at 522. Therefore, the Court held that Massachusetts had alleged a particularized injury. *Id.*

When considering whether the alleged injury was fairly traceable to the EPA's inaction, the Court stated: "EPA does not dispute the existence of a causal connection between manmade greenhouse gas emissions and global warming. At a minimum, therefore, EPA's refusal to regulate such emissions 'contributes' to Massachusetts' injuries." *Id.* at 523. The Court recognized that "predicted increases in greenhouse gas emissions from developing nations, particularly China and India, are likely to offset any marginal domestic decrease [in emissions]," but found that "U.S. motor-vehicle emissions make a meaningful contribution to greenhouse gas concentrations and hence, according to petitioners, to global warming." *Id.* at 524-25. The Court also explained that an agency's failure to take incremental steps to alleviate a problem can be contested in federal court. *Id.* at 524. As a result, the Court found that Massachusetts' alleged injury was fairly traceable to the EPA's inaction. *See id.* Finally, the Court found that the risk of catastrophic harm to Massachusetts was remote, but real, and the risk would be reduced to some extent if Massachusetts received the relief it sought. *Id.* at 526.

Therefore, the Court held that the petitioners had standing to challenge the EPA's denial of their rulemaking petition. *Id.*

In *American Electric Power Company v. Connecticut*, four Supreme Court justices determined that Connecticut and other states had standing to file a lawsuit seeking injunctive relief requiring electric power corporations to cap and reduce their greenhouse gas emissions. *Amer. Elec. Power Co. v. Connecticut*, 131 S. Ct. 2527, 2534-35 (2011).[8] The Court emphasized that it had not yet determined whether private citizens, environmental groups, or political subdivisions could file lawsuits seeking to abate out-of-state pollution. *Id.* at 2536.

In the present lawsuit, the plaintiffs primarily rely on Clean Water Act cases for support of their contention that they are only required to allege that the defendants' emissions *contributed* to the kinds of injuries that they suffered. This argument is actually derived from the last element of a three-part test adopted by the Fifth Circuit. In *Friends of the Earth, Inc. v. Crown Central Petroleum Corporation*, the Fifth Circuit explained:

> [W]e applied the three-part test from *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3d Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991)), to determine whether an injury is "fairly traceable" to a defendant's discharges. In a citizen suit under the Clear Water Act the plaintiff must demonstrate that "a defendant has (1) discharged some pollutant in concentrations greater

---

[8] The Court was equally divided in the *Connecticut* case with regard to the standing issue. *Connecticut*, 131 S. Ct. at 2535. Four justices felt that the state plaintiffs had standing, but four justices believed that none of the plaintiffs had standing. *Id.* Justice Sotomayor did not participate in the consideration or decision of the case. *Id.* at 2531.

> than allowed by its permit (2) into a waterway in which the plaintiffs
> have an interest that is or may be adversely affected by the pollutant
> *and* that (3) the pollutant causes or contributes to the kinds of injuries
> alleged by the plaintiffs."

*Friends of the Earth, Inc. v. Crown Cent. Petrol. Corp.*, 95 F.3d 358, 360-61 (5th Cir.

1996) (emphasis added).  In *Crown Central*, the Court held that the *Powell Duffryn*

test may not be useful in cases where the waterway at issue is very large.  *Id.* at

361.  In those cases, the Court stated that plaintiffs should demonstrate a "more

specific geographic nexus" to satisfy the causation element of standing.  *Id.*  The

Court held that the waterway at issue in the *Crown Central* case was too large to

infer causation solely from the use of some portion of it.  *Id.*  Specifically, the

plaintiffs in *Crown Central* utilized a lake that was eighteen miles downstream

from the location of the defendant's discharge.  *Id.*  The Court explained, "At some

point . . . we can no longer assume that an injury is fairly traceable to a defendant's

conduct solely on the basis of the observation that water runs downstream."  *Id.*

　　　In *Native Village of Kivalina v. Exxonmobil Corporation*, the Northern

District of California addressed similar arguments regarding the applicability of the

Clean Water Act contribution element to Clean Air Act and global warming cases.

*Native Vill. of Kivalina v. Exxonmobil Corp.*, 663 F. Supp. 2d 863, 877-80 (N.D. Cal.

2009).  In *Kivalina*, an Inupiat Eskimo village sued twenty-four oil, energy, and

utility companies, alleging that the defendants' emissions caused global warming,

which weakened and thinned sea ice attached to the Kivalina shore and caused

coastal storm waves and surges.  *Id.* at 868-69.  Kivalina, which is located

approximately seventy miles north of the Arctic Circle, alleged that its village had

become uninhabitable due to global warming.  *Id.* at 869.  The Court in *Kivalina*

held that the village lacked constitutional standing, because its injuries were not

fairly traceable to the defendants' emissions.  *Id.* at 880-82.   The Court explained

that it is insufficient for a plaintiff to merely demonstrate a contribution to the

harm alleged in Clean Water Act cases, since all three of the elements in the

*Powell-Duffryn* test are required elements.  *Id.* at 879-80 & n.7.  The Court noted

that in Clean Water Act cases, if the plaintiff demonstrates that a defendant's

discharge exceeds Congressionally-prescribed federal limits, "it is presumed for the

purposes of standing that 'there is a substantial likelihood' that defendant's conduct

caused plaintiffs' harm,' even if other parties have also made similar discharges."

*Id.* at 879.  The plaintiff in a Clean Water Act case can only rely on the contribution

element if that presumption arises.  *Id.* at 879-80.  The Court held that statutory

water pollution claims are distinguishable from global warming claims, because,

thus far, there are no federal standards limiting the discharge of greenhouse gases,

and as a result, no presumption arises that there is a substantial likelihood that

any defendant's conduct harmed the plaintiffs.  *Id.* at 879-80.   Furthermore, the

Court stated: "Plaintiffs essentially concede that the genesis of global warming is

attributable to numerous entities which individually and cumulatively over the

span of centuries created the effects they are now experiencing."  *Id.* at 880.

Therefore, the Court held that the Village could not show that any defendant's

conduct caused its injuries.  *Id.* at 881.

> According to the EPA,
>
> Greenhouse gases are naturally present in the atmosphere and are also emitted by human activities.  Greenhouse gases trap the Earth's heat that would otherwise escape from the atmosphere, and thus form the greenhouse effect that helps keep the Earth warm enough for life. Human activities are intensifying the naturally-occurring greenhouse effect by adding greenhouse gases to the atmosphere.

*Connecticut*, 131 S. Ct. at 2532 (quoting 74 Fed. Reg. 66499 (2009)).  "Greenhouse gases once emitted 'become well mixed in the atmosphere,' 75 Fed. Reg. 66514; emissions in New Jersey may contribute no more to flooding in New York than emissions in China."  *Id.* at 2536.  The Supreme Court recognized that the EPA has determined that greenhouse gas emissions create the following dangers: rising sea levels, more frequent and intense hurricanes, floods, coastal inundation and erosion, heat-related deaths, extreme weather events, drought, and destruction of ecosystems supporting animals and plants, but the Court recognized that there is some debate concerning whether the EPA's findings are correct.  *Id.* at 2533 & n.2. The Court cautioned that it "endorses no particular view of the complicated issues related to carbon-dioxide emissions and climate change."  *Id.* at 2533 n.2.

Contrary to the plaintiffs' assertions in the present case, the EPA's findings that greenhouse gases contribute to global warming, which in turn creates a danger for rising sea levels and extreme weather events, does not in and of itself support the contention that the plaintiffs' property damage is fairly traceable to the defendants' emissions.   The plaintiffs cannot allege that the defendants' particular

emissions led to their property damage.  At most, the plaintiffs can argue that the types of emissions released by the defendants, when combined with similar emissions released over an extended period of time by innumerable manmade and naturally-occurring sources encompassing the entire planet, may have contributed to global warming, which caused sea temperatures to rise, which in turn caused glaciers and icebergs to melt, which caused sea levels to rise, which may have strengthened Hurricane Katrina, which damaged the plaintiffs' property.

It is insufficient for the plaintiffs to allege that the defendants' emissions contributed to the kinds of injuries that they suffered.  As explained previously, the contribution requirement relied upon by the plaintiffs is merely one of three required elements for demonstrating the causation requirement of Constitutional standing in Clean Water Act cases.  There is no legal basis for adopting a more lenient causation standard in global warming lawsuits than that adopted in Clean Water Act cases.  In fact, the proof of a chain of causation in Clean Water Act cases is far less demanding than in global warming cases.  Clean Water Act cases generally pertain to source point pollution occurring in a single body of water, while global warming cases pertain to pollution in the form of green house gases that are released all over the planet.

This difference is particularly demonstrated by the *Crown Central* case, in which the Fifth Circuit held that plaintiffs who utilized a lake that was located a mere eighteen miles from the site at which the pollution was discharged did not have standing to file a lawsuit against the plant that released the water pollution.

-21-

This Court recognizes that the *Crown Central* case pertained to a motion for summary judgment, while the present lawsuit is at the pleading stage, but the alleged chain of causation in the present case, is by far and away, more tenuous than the causal chain alleged in the *Crown Central*.

The *Massachusetts* and *Connecticut* cases also support the finding that the plaintiffs in the present case lack standing. The United States Supreme Court pointed out that it has not held that private citizens have standing to assert global warming claims. In fact, the Supreme Court was only able to find that Massachusetts had standing to sue the EPA for failure to regulate emissions by granting it "special solicitude" due to its sovereign status. And, in the *Connecticut* case, only a plurality of the Supreme Court found that states have standing to sue companies that release emissions due to that same "special solicitude." All of the plaintiffs in the present lawsuit are private citizens, who have no sovereign status. Although it is true that the Supreme Court determined that Massachusetts had standing based on the allegation that the EPA's failure to regulate merely contributed to Massachusetts' alleged injuries, this does not mean that the private citizen plaintiffs in the present case can demonstrate the causal connection standard by showing a mere contribution to similar injuries. If contribution were enough, presumably there would have been no need for the Supreme Court to grant Massachusetts special solicitude in its standing analysis.

Furthermore, the causal connection would be even more difficult to establish in the present case than in the *Massachusetts* and *Connecticut* cases. Here the

plaintiffs must show that the defendants' emissions caused, or according to their arguments, contributed to a specific storm, Hurricane Katrina, and that their injuries would not have occurred if the defendants had not emitted greenhouse gases. In other words, the plaintiffs must show that the defendants' emissions caused or contributed to the specific damages they suffered during Hurricane Katrina.[9]

As this Court stated in the first *Comer* lawsuit, the parties should not be permitted to engage in discovery that will likely cost millions of dollars, when the tenuous nature of the causation alleged is readily apparent at the pleadings stage of the litigation. The Court finds that the plaintiffs have not alleged injuries that are fairly traceable to the defendants' conduct, and thus, the plaintiffs do not have standing to pursue this lawsuit.

## III. Political Question

"'[T]he concept of justiciability,' as embodied in the political question doctrine, 'expresses the jurisdictional limitations imposed upon federal courts by the case or controversy requirement of Art[icle] III.'" *Spectrum Stores, Inc. v. Citgo Petrol. Corp.*, 632 F.3d 938, 948 (5th Cir. 2011) (quoting *Schlesinger v. Reservists*

---

[9] As some of the defendants explained in their Memorandum, the plaintiffs would be required to demonstrate: "(1) what would the strength of Hurricane Katrina have been absent global warming; (2) how much of each Plaintiff's damages would have been attributable to Hurricane Katrina if it had come ashore at a lower strength; and (3) how much of each Plaintiff's damages was attributable to failures by others, such as FEMA and other governmental agencies, to prevent additional injury." (Defs.' Mem. 56 n. 34, ECF No. 210).

*Comm. to Stop the War*, 418 U.S. 208, 215 (1974)).  "At its core, the political

question doctrine, 'excludes from judicial review those controversies which revolve

around policy choices and value determinations constitutionally committed for

resolution to the halls of Congress or the confines of the Executive Branch.'"  *Id.* at

949 (quoting *Japan Whaling Ass'n v. Amer. Cetacean Soc'y*, 478 U.S. 221, 230

(1986)).  "The dominant consideration in any political question inquiry is whether

there is a 'textually demonstrable constitutional commitment of the issue to a

coordinate political department.'"  *Id.* at 950 (quoting *Saldano v. O'Connell*, 322 F.3d

365, 369 (5th Cir. 2003)).  However, the existence of a constitutional commitment is

not the only consideration, nor is this Court aware of any authority that makes it a

threshold consideration.[10]  The United States Supreme Court has held that

application of *any one* of the following elements renders a claim non-justiciable:

> (1) a  textually demonstrable constitutional commitment to a
> coordinate political department; or (2) a lack of judicially discoverable
> and manageable standards for resolving [the issue]; or (3) the
> impossibility of deciding without initial policy determination of a kind
> clearly for nonjudicial discretion; or (4) the impossibility of a court's
> undertaking independent resolution without expressing lack of respect
> to coordinate branches of the government; or (5) an unusual need for

---

[10] This Court is aware of the following statement made in a concurring opinion in *Zivotofsky v. Sec'y of State*, 571 F.3d 1227, 1238 (D.C. Cir. 2009): "Rather, the political question doctrine bars judicial review only when the precise matter to be decided has been constitutionally committed to the exclusive authority of a political branch of government."  However, when read in context, it appears that this statement was merely an exposition of the first *Baker* element, rather than an attempt to negate the remaining five elements.  In a preceding sentence, the concurring judge explained that the first *Baker* element should not be interpreted to mean that a Court may not decide a case that merely implicates a matter within the authority of a political branch. *Id.*

> unquestioning adherence to a political decision already made; or (6)
> the potentiality for embarrassment from multifarious pronouncements
> by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962).  The Supreme Court later classified the

*Baker* elements as "six independent tests" for determining the existence of a

political question, and surmised that the tests are probably listed in "descending

order of both importance and certainty."  *Vieth v. Jubelirer*, 541 U.S. 267, 277-78

(2004).

> "The judicial Power" created by Article III, §1, of the Constitution is
> not whatever judges choose to do . . . or even *whatever* Congress
> chooses to assign them . . . .  It is the power to act in the manner
> traditional for English and American courts.  One of the most obvious
> limitations imposed by that requirement is that judicial action must be
> governed by standard, by rule.  Laws promulgated by the Legislative
> Branch can be inconsistent, illogical, and ad hoc; law pronounced by
> the courts must be principled, rational, and based upon reasoned
> distinctions.

*Id.* at 278.  "[T]he potential for a clash between a federal court and other branches

of the federal government is fundamental to the existence of a political question; a

simple conflict between a federal court and state agencies does not implicate the

doctrine."  *Saldano*, 322 F.3d at 370 (quoting *Gordon v. Texas*, 153 F.3d 190, 194

(5th Cir. 1998)).

   The Supreme Court held that the *Massachusetts* case did not present a

political question.  However, that case is distinguishable from the present lawsuit.

In *Massachusetts*, "[t]he parties' dispute turn[ed] on the proper construction of a

congressional statute, a question eminently suitable to resolution in federal court."

*Massachusetts*, 549 U.S. at 516.  Moreover, as explained previously, the

*Massachusetts* case arose out of the EPA's failure to act; it did not concern a

nuisance lawsuit against emitters of carbon dioxide.  *See id.* at 510-514.  In fact, the

Supreme Court stated that it possessed neither the expertise nor the authority to

evaluate the policy judgments that EPA offered as justification for refusing to

regulate motor-vehicle emissions, such as issues involving foreign relations.  *Id.* at

533.

> In the *Connecticut* lawsuit, the Supreme Court explained:
>
> EPA commenced a rulemaking under § 111 of the Clean Air Act, 42
> U.S.C. § 7411, to set limits on greenhouse gas emissions from new,
> modified, and existing fossil-fuel fired power plants.  Pursuant to a
> settlement finalized in March 2011, EPA has committed to issuing a
> proposed rule by July 2011, and final rule by May 2012.  See Fed. Reg.
> 82392.

*Connecticut*, 131 S. Ct. at 2533.[11]  The Supreme Court explained that if the

*Connecticut* plaintiffs were dissatisfied with the outcome of the EPA's rulemaking,

they should seek review from the Court of Appeals.  "Indeed, this prescribed order of

decisionmaking – the first decider under the Act is the expert administrative

agency, the second, federal judges – is yet another reason to resist setting emissions

standards by judicial decree under federal tort law."  *Id.* at 2539.

---

[11] On February 16, 2012, the EPA issued a final rule establishing National
Emission Standards for Hazardous Air Pollutants from Coal- and Oil-Fired Electric
Utility Steam Generating Units and Standards of Performance for Fossil-Fuel-Fired
Electric  Utility,  Industrial-Commercial-Institutional,  and  Small  Industrial-
Commercial-Institutional Steam Generating Units.  77 Fed. Reg. 9304. The EPA
stated: "This rule is expected to reduce [carbon dioxide] emissions from the electricity
sector."  *Id.* at 9431.

Here, the plaintiffs contend that they are not asking this Court to regulate emissions or to make policy determinations concerning climate change. (Am. Compl. 12, ECF No. 28). However, in portions of their Amended Complaint, it is clear that plaintiffs ask the Court to determine that the defendants' levels of emissions are "unreasonable." For example, the plaintiffs allege in their Amended Complaint:

33.

The Defendants had and continue to have a duty to conduct their business in such a way as to *avoid unreasonably endangering* the environment, public health, and public and private property, as well as the citizens of the State of Mississippi.

34.

The Defendants breached their duties by emitting substantial quantities of greenhouse gases, knowing that such emissions would *unreasonably endanger* the environment, public health, and public and private property interests.

(Am. Compl.17-18, ECF No. 28) (emphasis added). The plaintiffs also allege that "[t]he injuries caused by Defendants' emissions are an *unreasonable* invasion of Plaintiffs' property rights." (Am. Compl. 15, ECF No. 28) (emphasis added). Thus, the plaintiffs are asking the Court, or more specifically a jury, to determine without the benefit of legislative or administrative regulation, whether the defendants' emissions are "unreasonable". Simply looking to the standards established by the Mississippi courts for analyzing nuisance, trespass, and negligence claims would not provide sufficient guidance to the Court or a jury. As some of the defendants argue in their Memorandum, the plaintiffs in the present case call upon a jury to:

-27-

> decide – based not on a rule or standard but instead on nothing more
> than its own policy preferences and predilections – which sectors or
> enterprises should have reduced their emissions, or otherwise altered
> their behavior, and which of them should now be forced to shoulder all
> or part of the alleged costs of climate change or damages caused by
> Hurricane Katrina.  The jury would [not be] applying the law, but
> creating it.

(Defs.' Mem. 42, ECF No. 210).

Similarly, the plaintiffs in *Connecticut* were asking the federal court to

determine what amount of carbon-dioxide emissions is unreasonable.  *Connecticut*,

131 S. Ct. at 2539.  The Supreme Court held that judgments concerning the

reasonableness of greenhouse gas emissions are properly committed to the EPA,

and if district courts were to make such judgments, those judgments would interfere

and potentially conflict with the EPA's actions.  *Id.* at 2540.

It is unclear how this Court or any jury, reguardless of its level of

sophistication, could determine whether the defendants' emissions unreasonably

endanger the environment or the public without making policy determinations that

weigh the harm caused by the defendants' actions against the benefits of the

products they produce.  Our country, this Court, and even the plaintiffs themselves

rely on the products the defendants produce.  As the Supreme Court stated:

> It is altogether fitting that Congress designated an expert agency,
> here, EPA, as best suited to serve as primary regulator of greenhouse
> gas emissions . . . .  Federal judges lack the scientific, economic, and
> technological resources an agency can utilize in coping with issues of
> this order . . . .  Judges may not commission scientific studies or
> convene groups of experts for advice, or issue rules under notice-and-
> comment procedures inviting input by any interested person, or seek
> the counsel of regulators in the States where the defendants are
> located.

*Connecticut*, 131 S. Ct. at 2539-40.  The Court finds that the claims presented by the plaintiffs constitute non-justiciable political questions, because there are no judicially discoverable and manageable standards for resolving the issues presented, and because the case would require the Court to make initial policy determinations that have been entrusted to the EPA by Congress.

## IV.  Preemption

In the *Connecticut* case, the United States Supreme Court stated: "We hold that the Clean Air Act and the EPA actions it authorizes displace *any* federal common law right to seek abatement of carbon-dioxide emissions from fossil-fuel fired power plants."  *Connecticut*, 131 S. Ct. at 2537 (emphasis added).  The Court did not reach the issue of whether the Clean Air Act preempted the plaintiffs' state common law nuisance claims, because the parties had not briefed that issue.  *Id*. at 2540.

Here, the plaintiffs argue that the *Connecticut* case is limited to federal common law nuisance claims for injunctive relief.  However, as previously explained, the *Connecticut* Court expressed concern that the plaintiffs were calling upon the federal courts to determine what amount of carbon-dioxide emissions is unreasonable as well as what level of reduction is practical, feasible, and economically viable.  *Id*.  The Court explained that those determinations had been entrusted by Congress to the EPA, and the judgments the plaintiffs sought from federal judges could not be reconciled with the decision-making scheme enacted by

-29-

Congress.  *Id.*  Therefore, the Court held that the federal common law of nuisance was displaced.  *Id.*

In the present case, although the plaintiffs do not request injunctive relief, they are asking this Court to make similar determinations regarding the reasonableness of the defendants' emissions.  As explained previously, the state law causes of actions asserted by the plaintiffs hinge on a determination that the defendants' emissions are unreasonable, and the plaintiffs' Amended Complaint specifically alleges that the defendants' emissions are unreasonable.  *See Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1277 (¶29) (Miss. 2007); *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 662 (Miss. 1995); *Comet Delta v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So. 2d 857, 860 (Miss. 1988); Am. Compl. 15-16, 17-18, ECF No. 28.  Therefore, the Court finds that the plaintiffs' entire lawsuit is displaced by the Clean Air Act.

## V.  Statute of Limitations

### A.  Savings Statute

Hurricane Katrina struck the Mississippi Gulf Coast on August 29, 2005. The present lawsuit was filed on May 27, 2011.  The plaintiffs do not dispute that Mississippi's three-year statute of limitations, Miss. Code Ann. § 15-1-49, applies to all of their claims,[12] but they argue that their lawsuit is not barred due to the

---

[12] The three-year statute of limitations provided by Miss. Code Ann. § 15-1-49 applies to all causes of action for which no other period of limitation has been prescribed.  With regard to federal common law claims, federal courts must borrow the applicable statute of limitations from the state in which it sits.  *McGuire v. Baker*, 421

applicability of Mississippi's savings statute, Miss. Code Ann. § 15-1-69.[13]

The savings statute provides:

> If in any action, duly commenced within the time allowed the writ shall be abated, or the action otherwise avoided or defeated, by the death of any party thereto, or for any matter of form, or if, after verdict for the plaintiff, the judgment shall be arrested, or if a judgment for the plaintiff shall be reversed on appeal, the plaintiff may commence a new action for the same cause, at any time within one year after the abatement or other determination of the original suit, or after reversal of the judgment therein, and his executor or administrator may, in case of the plaintiff's death commence such new action, within the said one year.

Miss. Code. Ann. § 15-1-69.  The Mississippi Supreme Court has held that the savings statute applies to cases "[w]here the plaintiff has been defeated by some matter not affecting the merits, some defect or informality, *which [the plaintiff] can remedy or avoid by new process*."  *Marshall v. Kansas City S. Rys. Co.*, 7 So. 3d 210, 214 (¶16) (Miss. 2009) (quoting *Hawkins v. Scottish Union & Nat'l Ins. Co.*, 69 So. 710, 713 (Miss. 1915)) (emphasis added).  The statute is considered to be highly remedial and is liberally construed.  *Id.*  The Mississippi Supreme Court has held

---

F.2d 895, 898 (5th Cir. 1970).  Therefore, Mississippi's three-year statute of limitations also applies to the federal common law nuisance claim.

[13] The parties have not briefed the choice of law issue related to the plaintiffs' state law claims.  The plaintiffs contend that Mississippi law applies, but at least some of the defendants argue that the law of the states in which each defendant's emissions were released would apply pursuant to *North Carolina ex rel. Cooper v. TVA*, 615 F.3d 291, 306 (4th Cir. 2008).  However, the defendants argue that, even if Mississippi law does apply, the plaintiffs' claims are barred.  Therefore, the Court will address the applicability of the savings statute without determining whether Mississippi law applies.

-31-

that the savings statute does not apply in situations where the original complaint was dismissed with prejudice.  *Estate of Pope ex rel. Payne v. Delta Health*, 55 So. 3d 1080, 1082 (¶11) (Miss. 2011).   When a dismissal with prejudice is entered, the plaintiff is not permitted to bring a subsequent lawsuit concerning the same claim or cause of action.  *Id.*  The remedy in that circumstance is an appeal.  *Id.*

The plaintiffs are not entitled to invoke the savings statute with regard to any of their claims.  Since a judgment of dismissal with prejudice was entered in the first lawsuit, the savings statute does not apply.  Although the plaintiffs' appeal was dismissed, they were not left without a remedy.  The Fifth Circuit notified the plaintiffs that they could petition the United States Supreme Court for a writ of certiorari, but the plaintiffs chose not to do so.  Instead, they merely sought a writ of mandamus and waived their right to a review of this Court's Judgment.

Moreover, the plaintiffs overlook an important requirement for applicability of the savings statute– that the refiling of the cause of action must remedy the defect that caused the dismissal in the original case.  *See Marshall*, 7 So. 3d at 214 (¶16).  For example, in *Marshall v. Kansas City Southern Railways Company*, the plaintiffs were permitted to re-file their lawsuit in state court after it became apparent that the federal court in which the case was previously preceding did not have jurisdiction to hear their case.  *Id.* at 216 (¶28).  In the present case, the plaintiffs' claims were not dismissed as a matter of form; their appeal was.  The plaintiffs' claims were dismissed by a Judgment of dismissal with prejudice entered as a result of the political question doctrine and the plaintiffs' lack of standing.  The

plaintiffs could not correct the lack of jurisdiction by filing a new lawsuit in the same court.  As a result, the Court finds that the plaintiffs' claims are not preserved by the Mississippi savings statute.

### B.  Continuing Torts

The plaintiffs also assert that they have alleged continuing torts, and therefore, the statute of limitations does not bar their claims.  Under Mississippi law:

> [A] cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested . . . . In order to become an enforceable tort claim, proof of the following four elements must be present: duty, breach of duty, causation, and actual damage.  It is not vested until all four elements are present.  Further, in the absence of damage, no litigable event arose.

*Amer. Gen. Life & Accident Ins. Co. v. Edwards*, 76 So. 3d 183, 186 (¶8) (Miss. Ct. App. 2011) (internal quotations and citations omitted).

The plaintiffs' claims related to Hurricane Katrina accrued on August 29, 2005, the date on which the plaintiffs suffered damages.  The remainder of the plaintiffs' claims pertain to a future risk of more severe storms and loss of property. These claims are not claims for damages that the plaintiffs have suffered, but are claims for damages that the plaintiffs may suffer in the future.  The plaintiffs do not seek injunctive relief in this case.  Therefore, these claims alleging a future risk of harm are not yet actionable.  As a result, the Court finds that the only actionable claims filed by the plaintiffs are their claims concerning Hurricane Katrina, and those claims are barred by the statute of limitations.

## VI.  Proximate Cause

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Assuming for the sake of argument only that the plaintiffs have alleged injuries that are fairly traceable to the defendants' conduct, they certainly have not made allegations that satisfy the more stringent proximate cause standard under Mississippi law.[14]  Proximate cause is defined as the "cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred." *Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1166 (¶15) (Miss. 2011) (quoting *Delahoussaye v. Mary Mahoney's, Inc.*, 783 So. 2d 666, 671 (¶13) (Miss. 2001)).  There are two components of proximate cause – (1) cause in fact and (2) legal cause.  *Holmes v. Campbell Props., Inc.*, 47 So. 3d 721, 724 (¶10) (Miss. Ct. App. 2010).  The cause in fact element is satisfied if the plaintiff demonstrates that his injury would not have occurred but for the defendant's negligence.  *Id.*  The defendant's negligence is the legal cause of the injury if the injury is a "reasonably foreseeable consequence of the defendant's negligence." *Id.*  "A defendant is not liable for damages which are remote or collateral, or which result from a remote,

---

[14] The plaintiffs rely on Mississippi law in support of their claims.  Therefore, the Court will only address Mississippi law, rather that considering whether the law of each state in which the emissions occurred should be applied.

improbable, or extraordinary occurrence, although such occurrence is within the range of possibilities flowing from the defendants' negligent act." *Dillon v. Greenbriar Digging Serv., Ltd.*, 919 So. 2d 172, 177 (¶12) (Miss. Ct. App. 2005).  The assertion that the defendants' emissions combined over a period of decades or centuries with other natural and man-made gases to cause or strengthen a hurricane and damage personal property is precisely the type of remote, improbable, and extraordinary occurrence that is excluded from liability. Therefore, the Court finds that the plaintiffs have not asserted a plausible claim for relief under state law.

## VII.  Certain Defendants' Motion for Sanctions

Alpha Natural Resources, Inc., Massey Energy Company, Peabody Energy Corporation, and Rio Tinto Energy America, Inc., have filed a Motion [211] for Rule 11 Sanctions.  Fed. R. Civ. P. 11(b)(2) provides that when an attorney signs a pleading, he certifies that to the best of his knowledge, information, and belief, formed after conducting a reasonable inquiry that the claims asserted are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law.

The Coal Company defendants argue that the plaintiffs did not conduct a reasonable inquiry into the law before filing this case, because a reasonable inquiry would demonstrate that this lawsuit is barred by the doctrines of res judicata and collateral estoppel.  The plaintiffs have never directly addressed the applicability of res judicata and collateral estoppel to this lawsuit, but they assert that their

lawsuit was properly filed pursuant to the Mississippi savings statute.  Although the Court has determined that the savings statute does not apply to the plaintiffs' claims, the Court finds that the plaintiffs maintained the good faith belief that the savings statute did in fact apply.  As a result, the Court finds that the defendants' Motion for Sanctions should be denied.

## VIII.  Remaining Motions

For the reasons stated in this opinion, the Court finds that the plaintiffs' lawsuit should be dismissed with prejudice as to all defendants.  All other pending Motions are therefore moot.

## CONCLUSION

The Court finds that all of the plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel.  Alternatively, the Court finds that the plaintiffs do not have standing to assert their claims, because their alleged injuries are not fairly traceable to the defendants' conduct.  Moreover, the Court finds that this lawsuit presents a non-justiciable political question, and that all of the plaintiffs' claims are preempted by the Clean Air Act.  The Court further finds that the plaintiffs' claims are barred by the applicable statute of limitations, and that the plaintiffs cannot possibly demonstrate that their injuries were proximately caused by the defendants' conduct.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [100] to Dismiss filed by Hess Corporation, the Motion [207] to Dismiss Amended Complaint  filed by Certain Defendants, the Motion [208] to Dismiss filed by the

Coal Company Defendants, and the Motion [217] to Dismiss filed by Total

Petrochemicals USA, Inc. and Total Gas & Power North America, Inc., are

**GRANTED**.

   **IT IS, FURTHER, ORDERED AND ADJUDGED** that this lawsuit is

**DISMISSED WITH PREJUDICE** for the reasons stated in this Court's opinion.

   **IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion [211] for

Rule 11 Sanctions filed by Certain Coal Company Defendants is **DENIED**.

   **IT IS, FURTHER, ORDERED AND ADJUDGED** that all other pending

motions are **MOOT**.

   **SO ORDERED AND ADJUDGED** this the 20th day of March, 2012.


                                        s/ *Louis Guirola, Jr.*
                                        LOUIS GUIROLA, JR.
                                        CHIEF U.S. DISTRICT JUDGE